THE GLEN AND HALL MANUFACTURING COMPANY, Respondent, *v.* CHARLES S. HALL, Appellant.

Where one has established a business at a particular place, from which he has or may derive profit, and has attached to such business a name indicating to the public where it is carried on, he thereby acquires property in the name, which will be protected from invasion by a court of equity on principles analogous to those applicable in case of the invasion of a trade mark. (LOTT, Ch. C., and EARL, C., dissenting.)

In an action to enforce such a right, and to restrain its violation, a counter-claim on the part of defendant alleging that he is himself the owner of the name; that plaintiff has wrongfully used it, and asking that plaintiff be restrained from such use, and be required to pay damages for the infringement of the defendant's right thereto is proper, and if the allegations are sustained, defendant is entitled to the relief sought. It is a

cause of action connected with the subject of the action set forth in the complaint, and so falls within the definition of a counter-claim, as given by the Code (§.150). (Lott, Ch. C., and Earl, C., dissenting.)

*Glen and Hall Manufacturing Company* v. *Hall* (6 Lans., 158) reversed. The authorities on the subject of trade marks and good-will collated.

Appeal from order of the General Term of the Supreme Court in the fourth judicial department, setting aside a decision of Special Term and granting a new trial on a case heard under section 268 of the Code. (Reported below, 6 Lans., 158.)

The action was brought to restrain the defendant from using an alleged trade mark, "Number 10," on the ground that it was a part of the plaintiff's trade mark.

The defendant admitted that he used the words "Number 10" in his business, but alleged that it was part of his own trade mark, and set up that the plaintiff had fraudulently used the same for the purpose of unfairly securing the defendant's customers, and asked, by way of counter-claim, that the plaintiff might be enjoined from using the words in the course of its business to the defendant's damage.

The justice at the trial found the following facts: Joseph Hall established, more than thirty years before the trial, on South Water street in the city of Rochester, a manufactory for the construction of threshing machines. The business was carried on extensively until his death, in 1865. His establishment was known for many years as "Number 10 South Water street."

The defendant, Charles S. Hall, purchased the establishment from the executors of Joseph Hall, together with "the tools, patterns and fixtures," in May, 1868, and took possession of the same in February, 1869, since which time he has carried on the same business at the same place. In April he printed in his hand-bills, and adopted as his trade mark, the words, "The Old Joseph Hall Agricultural Works, No. 10 South Water street, Rochester, N. Y.," and continued to use such trade mark until restrained by the injunction granted in the action.

In September or October, 1869, the plaintiff rented a small office on South Water street, a short distance from the defendant's place of business, and painted the number on it, and also printed the number on its bills and on its sign, in the following terms: "The Glen & Hall Manufacturing Company, No. 10 South Water street, Rochester, New York."

At this time the plaintiff was carrying on the same business as the defendant. Its shops are located in the town of Brighton, two miles and more from the shops of the defendant. It took the office in South Water street and adopted the number (10) with the intention of interfering with the defendant's business, and unfairly securing his customers.

On these findings the judge reached the conclusion of law that "Number 10," at the time of the purchase in April, 1869, and since, was a material part of the defendant's trade mark; that he was entitled to compensation for damages occasioned by his being restrained from using it, as well as to those sustained by reason of the plaintiff's use, and also to a perpetual injunction restraining the plaintiff from using said number as its trade mark, or keeping the same on its office or building in South Water street, or using it in any way in imitation of the defendant's trade mark.

A reference was then ordered to ascertain and report the damages, and on the confirmation of the report judgment was directed to be entered.

The motion for a new trial was granted by the General Term, on the ground that the defendant was not entitled to the special relief, both because "Number 10" was not a trade mark, and that if it were, such relief could not be granted by way of counter-claim to the present action.

*James C. Cochrane* for the appellant. Defendant was entitled to the relief granted on the facts found. (*Amosk. Mfg. Co.* v. *Spear*, 2 Sandf., 599; *Gillott* v. *Esterbrook*, 48 N. Y., 374; *Newman* v. *Alvord*, 49 Barb., 588.) It was too late for plaintiff to raise, at General Term, the question that this

matter could be set up by way of counter-claim. (*Ashley* v. *Marshall*, 29 N. Y., 494; *Sheldon* v. *Horton*, 43 id., 99.)

*James Brick Perkins* for the respondent. It was error to hold that the words "No. 10" were a part of defendant's trade mark, and that he was entitled to recover damages sustained by plaintiff's use of them. (Upton on T. M., 9, 15, 22; *Collins* v. *Cowen*, 3 K. & J., 428.) It was error to grant defendant affirmative relief, for it was in no sense a counter-claim. (Code, § 150; *Burns* v. *Nevins*, 27 Barb., 493; *Barhyle* v. *Hughes*, 33 id., 320.)

Dwight, C. The first question which will be considered in this case is whether the words "Number 10," used under the circumstances detailed in the statement of facts, constitute a good trade mark.

It must be conceded that it does not comply with the definition of a trade mark as usually given in the text books. That has been commonly confined to the products of manufacture or of human labor. Thus, Upton says, " a trade mark is the name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant in order to designate the goods that he manufactures or sells and distinguish them from those manufactured or sold by another, to the end that they may be known in the market as his." (Page 9.) The doctrine was, however, extended in *Congress Spring Company* v. *High Rock Spring Company* (45 N. Y., 291), to a peculiar product of nature, the water of mineral springs, generally known in the market and sold as a useful 3. In that case it was declared that the true principle applicable to the subject was that the purchaser of an article under a trade mark has a right to have the very thing which he seeks; and the owner has the right that the very thing sought shall be sold for his profit. This rule was held to be as clearly applicable to such products of nature as have been referred to, as to the results of human industry.

In the case at bar there was no product of industry or of nature. The trade mark, if it existed at all, was attached to the building or works in which the products of human labor were made. This fact does not affect the application of the principle set forth in the *Congress Spring Case.* It is still true that the purchaser of an article manufactured at "No. 10 South Water street" has a right to have the very thing which he seeks, and the owner of the goods there manufactured has the right that the very thing sought shall be sold for his profit.

The authorities are not at variance with this conclusion, but tend to support it.

The case at bar, properly considered, is a species of "good will," analogous to a trade mark. (Browne on Trade Marks, §§ 96–100.) In *Churton* v. *Douglass* (1 Johnson [English], 188), V. C. WOOD (Lord HATHERLEY), explains with care the meaning of the term "good-will." It does not mean simply the advantage of occupying particular premises which have been occupied by a manufacturer, etc. It means every advantage, every positive advantage that has been acquired by a proprietor, in carrying on his business, whether connected with the premises in which the business is conducted, or with the name under which it is managed, or with any other matter carrying with it the benefit of the business.

It is a well known fact that the "good-will," like a trade mark, is a species of property. It is a subject of sale by the proprietor or may be sold by order of the court. The cases in which a sale has taken place by order of the court have been, in general, those of partnership. These have been treated as cases of property, and it is on that ground alone that the jurisdiction of the court has attached to them.

There may thus be, in a particular business, both a "good-will" attending it and a trade mark attached to goods manufactured and sold. Each of these is under the protection of a court of equity. (*Hall* v. *Barrows*, 9 Lond. Jurist [N. S.], 483; S. C., 4 De G., J. & S., 150.) The court in each case acts on the principle of preserving a property in the good-

will or trade mark. (*Hall* v. *Barrows, supra; Bury* v. *Bedford*, 9 id., 956; *Edelsten* v. *Edelsten*, 9 id., 479; *Partridge* v. *Menck*, How. App. Cases, 559.) In the case of *Cloth Company* v. *Cloth Company* (9 Law Times [N. S.], 558; 4 De G., J. & S., 137), it is said that the jurisdiction of the court to grant relief does not rest on supposed fraud, but upon a *property* in the trade mark, and upon the fact that an injunction is the only mode of protecting it. The earlier cases to the effect that there is no property in a trade mark must be deemed in that respect to be overruled. (*Perry* v. *Truefitt*, 6 Beav., 73; *Collin's Co.* v. *Brown*, 3 Jur. [N. S.], 929; *Blanchard* v. *Hill*, 2 Atk., 485.)

A trade mark, or a designation of one's trade, may thus be sold by order of the court, whether it be attached to a new business or to one long existing. In such case "goodwill" and trade marks are governed by similar rules. In *Bradbury* v. *Dickens* (27 Beav., 53), on the dissolution of a partnership, the title of a magazine, "Household Words," was, by order of the court, put up at auction and sold. The court said that property in a literary periodical like this is confined purely to the mere title, and that forms part of the partnership assets and must be sold for the benefit of the partners, if of any value. The decree ordered the sale of the right to use the name of the periodical and the right to publish, under the same name and title, *any periodical or other work, whether in continuance of said periodical called "Household Words," or otherwise, as the purchaser might think fit.* The sale showed what the value of a mere title might be, as it produced £3,550.

It would follow, from these principles, that if a person had established a business at a particular place, from which he has derived, or may derive, profit, and has attached to that business a name indicating to the public where or in what manner it is carried on, he has acquired a property in the name which will be protected from invasion by a court of equity, on principles analogous to those which are applied in case of the invasion of a trade mark.

In *Harper* v. *Pearson* (3 Law Times [N. S.], 547), the plaintiff and defendant carried on business of a similar description. On the expiration of the term, in a lease of certain works to the plaintiffs, where they had carried on their business, the defendants, fifteen months afterward, had procured a lease of the same works, with the exception of certain mines of clay. The defendants issued a circular and card tending to lead the public to suppose that the defendants had succeeded to the business of the plaintiff, and were working the same material as the plaintiff had formerly used. It was held by the court, that though the words of the circular and card might be literally true, yet if they tended to mislead the public it would restrain them from further circulating or issuing any similar circular or card. The court said: "It is a clear case that the defendants have represented on the card to the public that Messrs. Pearson are late 'Harpers & Moore,' and they have no business to do that, and I must grant an injunction." This case is a strong illustration of the doctrine under consideration, as the court must have held that the plaintiffs in that case had a property in the good-will of the business and of the name under which it was carried on, even after they had ceased to transact their business at the particular place where the appellation "Harpers & Moore" was first used. In other words, the name of the business could be severed from the place where it was transacted, and while thus separated could be treated as an object of property, so as to prevent third persons from attaching it to their business and thus depriving the owners of a legitimate profit which they might reap elsewhere under the same name. It seems plain that if a banking-house had acquired a name, such as that of Baring Brothers, though there were no partner of the name of Baring, it would, on general principles of law, and independent of a statute preventing the use of fictitious names, have a property in such name, without reference to the particular place where the business was carried on. Though the name might be inseparable from the business, it would be separable from the premises; so that the business

might, for example, be carried on on the opposite side of the street. These doctrines find further support in *Partridge* v. *Menck* (2 Barb. Ch., 103); *Peterson* v. *Humphrey* (4 Abb. Pr., 394); *Howard* v. *Henriques* (3 Sand. R. [S. C.], 725); *Marsh* v. *Billings* (7 Cush., 322); *Christy* v. *Murphy* (12 How. Pr., 77); *Hudson* v. *Osborne* (39 L. J. [N. S. Ch.], 79; other cases in Browne on Trade Marks, chap. 12.)

In *Partridge* v. *Menck*, Chancellor WALWORTH said: The court, in trade mark cases, proceeds on the ground that the plaintiff has a valuable interest in the good-will of his trade or business, and that having appropriated to himself a particular label, sign or trade mark, indicating that the article is manufactured or sold by him under his authority, or *that he carries on his business at a particular place*, he is entitled to protection against any one who attempts to pirate upon the good-will of his friends or customers, or patrons of trade, by sailing under his flag without his authority.

In *Howard* v. *Henriques*, the question was as to the rights of a hotel proprietor to the designation of his hotel (Irving house). The court said that every man ought to be permitted to pursue his lawful calling in his own way, provided he does not encroach on the rights of his neighbors or the public good. But he must not, by any deceitful or other practice, impose on the public, and he must not, by dressing himself in another man's garments, and by assuming another man's name, endeavor to deprive that man of his own individuality and of the gains to which, by his industry and skill, he is fairly entitled. It was held that in the case then under discussion the hotel-keeper must not be deprived of the fruits of that good-will which belonged to himself alone. *Marsh* v. *Billings* (*supra*) presented facts involving a like principle.

In *Christy* v. *Murphy*, the rule was applied to the protection of a place of public amusement. *Hudson* v. *Osborne* (*supra*), is quite in point. The "good-will" in a title to a manufactory of certain provisions had been sold by assignees

in bankruptcy to the plaintiffs, who continued to carry on under the title ("Osborne house") a business such as that which the defendant Osborne, the bankrupt, had formerly conducted under the same name. Osborne, having been discharged in the bankrupt proceedings, commenced anew, and used upon his new place of business the words "Osborne house," where he carried on the same kind of manufacturing as before. He put up signs on his buildings and issued circulars calculated to lead the public to believe that he was conducting the old business. The court said that he had no right to use the words "Osborne house" as holding out, in any manner, that he was carrying on business in continuation of or in succession to the business originally conducted by Osborne, the defendant. He might have said that he had been twenty-two years at the Osborne house, or that one of his partners had been for many years managing there, but he must not appropriate to himself the very words which were selected to designate the business, so as to lead persons to think that he is continuing the identical business which has been sold. On the same principle, a person who has been a manager of another's business has a right, on setting up an independent business, to make known to the public that he has been with the firm, but he must take care not to do so in a way calculated to lead the public to believe that he is carrying on the business of his former employer, or is in any way connected with it. (*Glenny* v. *Smith*, 2 Drew. & Sma., 476; *Hookham* v. *Pottage*, L. R. [8 Ch.], 91.) It was not denied by the plaintiff in the present case, that the words "Number 10," South Water street, were a mere arbitrary designation, and did not correspond to any street numbering. It is clear that this title passed with the property and business. (*Hudson* v. *Osborne, supra; Hall* v. *Barrows, supra;* Upton on Trade Marks, 75, citing *Compere* v. *Bajou,* French Court of Cassation; *Howe* v. *Searing,* 10 Abb. Pr., 264.) The neglect to carry on the business for a number of years does not prevent a party from resuming his trade mark or sign of the good-will, nor entitle another to use it. (Same

cases.)   It is also held in *Walton* v. *Crowley* (3 Blatch., 440), that a person may become a complete assignee of a trade mark and acquire all the rights of the former owner.

The defendant, however, in the present case, had acquired the right, by his own acts, to make use of the designation. There is evidence to show that the defendant, in June 1869, issued a price-list of his manufactures as of 10 South Water street.   The plaintiff did not make use of this designation until after August ninth of that year.   No particular length of time is necessary.   Lord ROMILLY, in *Hall* v. *Barrows*, said that the right might be acquired in a week's use, even though the article to which the trade mark was attached had acquired no particular reputation in the market under the designation.   These propositions are perfectly consistent with the idea that a trade mark, etc., is property.

It is claimed, however, in one of the plaintiff's points, on the argument, that the learned judge, at the trial, erred in his finding of facts, as there was no evidence to support some of them.   No such point was taken at the General Term. That tribunal proceeded on the ground that there was no right of the defendant which could be protected in the action, assuming the facts to be as found by the judge.   If, however, the correctness of his findings is before us, I think that there was evidence sufficient to maintain such findings as are necessary to uphold the defendant's right.   Any thing beyond this is immaterial, and could not harm the plaintiff.

It is now necessary to inquire whether the rights of the defendant to the good-will of the business can be enforced in the present action by way of counter-claim.   The proper conclusion in this case must be derived from a construction of the one hundred and fiftieth section of the Code.   The language of that section is as follows : " The counter-claim must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action : 1. A cause of action arising out of the contract or transaction set forth in the complaint, as the foundation of

the plaintiff's claim, or connected with the subject of the action." The true construction of the last clause is to supply the word " either" before " arising," so that it will read " a cause of action either arising out of the contract * * * or connected with the subject of the action." There will then be two distinct cases provided under subdivision 1 : (*a.*) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim. (*b.*) A cause of action connected with the subject of the action. The present case falls under the last of these instances. " A subject" is that on which any operation, either mental or material, is performed; as, a subject for contemplation or controversy. The subject of an action is either property (as illustrated by a real action), or a violated right. In the present instance, the subject of the plaintiff's action was the expression " Number 10," of which he claimed ownership as a designation of his business. The defendant's counter-claim is a cause of action against the plaintiff growing out of his infringement of the defendant's right to the same expression, which he asserts belongs to himself. It is closely united to the matter in controversy; it is, in fact, inseparable from it. In the language of the Code it is " connected" with it. The injunction is a mere remedy, purely incidental to the subject of the action, and not the subject itself. The correctness of these conclusions is shown by an illustration. Suppose that a hunter claims a deer wounded in the forest. Another hunter alleges that the wound was so slight as not to injure the animal; that he first got possession, and that the deer belongs to him. The first hunter brings an action of replevin. The subject of the action is the deer, or the property in it; and the defendant's counter-claim may be that, by reason of the ownership in himself, he has a cause of action for injuries done to it by the plaintiff. Is not this cause of action, on his part, " connected" with the subject of the action ? He could certainly set up, by way of defence, that the plaintiff was not owner. Why not allow him to obtain redress in the same action for any injury done

by the plaintiff to the property which he proves belongs to himself. The plaintiff, in the present action, said, in substance, to the defendant: " Number 10 " is my property, and you must not use it. The defendant responds, in his counterclaim : It is mine; you are injuring me by your unlawful use of it. I ask that you may be restrained, and may pay damages for past injuries. Is not this claim connected with the subject of the plaintiff's action ? The policy of the Code requires a liberal construction of this section, to the end that controversies between the same parties, on the same subject-matter, may be adjusted in a single action. (See *Ashley* v. *Marshall*, 29 N. Y., 494.)

It is said that the counter-claim in the present case was not set up in the answer with sufficient distinctness. Evidence on the subject was, however, given, without objection, at the trial. The facts were all brought to the attention of the court, and it is now too late to raise this question.

The order of the General Term should be reversed, and that of the Special Term should be affirmed.

All concur; except Lott, Ch. C., and Earl, C., dissenting.

Order reversed, and decision of Special Term affirmed.