Neilson, Ch. J.
The question is whether the words, as thus arranged, performed the mere office of informing the public that the defendant was engaged in business there and was the same person who had been a member of the old firm, or whether they were calculated to mislead the public and divert to that store the customers of the plaintiffs or persons intending to become such customers.
It was urged on behalf of the defendant that as the buildings occupied by the parties are quite unlike: that of the plaintiffs much the largest, ornamental and of iron, that of the defendant plain and of brick, persons acquainted with the plaintiffs’ place, and paying some attention to appearances, would not mistake the one store for the other. That is true, and would be of importance in the absence of any device creating an artificial or seeming relation between the two stores, or even with such device if all persons would “ pay attention to appearances.” As an illustration it may be sufficient to say that in a well-considered case' in which the defendant was enjoined by reason of the character of his sign, the stores were in different parts of the city of London, so that anyone who would take the *276 trouble to consider the matter could see that the defendant’s place of business, which was on Oxford street, was not that of the plaintiff, which was and always had been on the Strand.
It was shown by witnesses for this defendant that the words “of the late firm of” are in letters as large as those on some signs put up for business purposes. But there is a difference between the effect of words of a reduced size when standing alone, or when coupled with other and larger words. The latter, especially if in the lowest line, would catch the eye when the smaller words on the line above would not. So, too, it was proved that the words “of the late firm of” could be read from the opposite side of the street and from the corner two hundred feet away. That being so it would have been quite to the purpose if some good reason could have been given for having the words that follow those much larger. If the words “ of the late firm of” are in letters large and plain enough, why should the name of the old firm be in letters more than twice that size? There is, — indeed, can be, — no good reason. Without imputing to the defendant any fraudulent intention, the element of fraud not being material in cases of this class (Millington v. Pox, 3 M. & G. 338), it is impossible to avoid the conviction that this sign was cunningly arranged, and is calculated to mislead persons not pausing to read or consider all the words on it. It was proved that some persons were in fact misled, that on seeing the words “Smith, Gray,” they went into the defendant’s store to make purchases when they had intended to go to the plaintiffs’ store.
The equitable principles governing questions of this character have been concurrently applied by the courts in this country and in England, and in cases less marked and decisive than this case, injunctions have been granted.
In Croft v. Day (7 Beav. 84), the master of the *277 rolls, after noticing, between the two labels, distinctions sufficient to protect one who took upon himself the task of study and comparison, came to the conclusion that there was quite sufficient to mislead the ordinary run of persons, and lead them to believe that the new establishment was, in some way or other, connected with the old, and the defendant was restrained.
In Glenny v. Smith (2 Dr. &Sm. 476), the defendant, a clerk, on leaving the plaintiff’s firm and starting the same kind of business, put on his sign the words “Prom Thresher and Glenny,” the word “from” in smaller letters than the rest. In holding that to be improper, the vice-chancellor said that it was vain for witnesses on ‘the defendant’s part to say that, in their opinion, persons could not be misled; that where one went to try the effect of his own inspection, he knew what he would find, and was prepared to look for the word “from,” but the general public would be off their guard when they passed the shop. He further said that it was not a question whether the public generally, or even a majority of them, were likely to be misled, but whether the unwary, the heedless portion of the public, would be misled.
In the case of Hookham v. Pottage (L. R. 8 Ch. App. 91), the question arose, as it does here, between persons who had been copartners. The defendant, retiring and on his own account engaging in the same line of business, put up the words “S. Pottage, from Hookham and Pottage ’ ’ on his sign. The word ‘ ‘ from ’ ’ and the word “and” were in small capitals, the other words in large Homan capitals. The vice-chancellor granted an injunction against the use of the sign, and on appeal that was affirmed. Sir W. M. James, Lord Justice, in considering the case, said that the question was “whether the conduct of the defendant was calculated to mislead the casual passer-by,” and he came to the conclusion that as the words “Hookham and *278 Pottage” were in almost as conspicuous characters as “ S. Pottage,” a stranger would be naturally misled.
The cases of Glenny v. Smith, and Hookham v. Pottage, are referred to with approbation in 61 N. Y. 234. The cases of Devlin v. Devlin (4 Hun, 651),* and Peterson v. Humphrey (4 Abb. Pr. 394), and other cases which might be cited, illustrate the,same doctrine.
The plaintiffs must have judgment restraining the defendant from using the sign in question.

 Same case more fully reported in 67 Barb. 090 ; affi’d with hesitation in 69 N. Y. 212.