GEORGE R. BIXBY, APPELLANT, *v.* FRANCES S. BARKLIE AND WASHINGTON A. COSTER, RESPONDENTS, IMPLEADED WITH JOHN L. BARBOUR.

*Property held for the benefit of sureties — when they are released by the failure of the trustee to hold it.*

December 19, 1871, Stephanie Barbour, John L., her husband, F. S. Barklie and W. A. Coster executed a bond to one Jenett M. Clark, to secure outstanding notes signed and indorsed by the obligors. The debts were the individual debts of Stephanie, and Barklie and Coster signed only as sureties for her. Prior to that time Stephanie had executed a power of attorney to one Slocum, authorizing him to receive one-half of the annual income payable to her each year during the term of her natural life by a trustee, and apply the same in payment of her debts. This power of attorney continued in force until 1872, when Stephanie and Slocum agreed to and did revoke and cancel the same. Slocum knew of the relation existing between the parties. April 12, 1872, Jenett M. Clark assigned the bond to Maria B. Clark, who, on January 8, 1875, assigned it to Slocum, who, on September 18, 1879, assigned it to the plaintiff, who brought this action to recover the amount due thereon, Stephanie being then dead.

*Held*, that the plaintiff took the assignment from Slocum charged with all the equities which existed in favor of the sureties against Slocum.

That the action of Slocum in surrendering and revoking the power of attorney, and neglecting to collect the amounts payable to him thereunder, released the sureties to the bond, so far as he was then, or by the assignment subsequently became, interested in the same, and that the action could not be maintained. (LEARNED, P. J., dissenting.)

APPEAL from a judgment in favor of the defendants, entered upon the report of a referee. The action was brought upon a joint and several bond executed by the defendants and one Stephanie Barbour, the wife of defendant John L. Barbour, since deceased, to one Jenett M. Clark, dated December 19, 1871, conditioned for the payment of $4,566 and interest in five years from the date thereof. The complaint alleges an assignment of the bond by Jenett M. Clark to one Maria B. Clark, by Maria B. Clark to one William Slocum, and by William Slocum to the plaintiff.

It appeared that on the 20th day of November, 1865, the defendant John L. Barbour and his wife, Stephanie, executed and delivered to William Slocum an instrument or power of attorney, authorizing him to receive from Walter L. Livingston one-half of all moneys due on and after the first day of May, 1865, belonging to said Stephanie, or to the said John L. in right of his wife, until all debts owing by the said Stephanie on the 1st day of May, 1865, to all persons within the county of Saratoga, and all interest thereon should be fully paid. Slocum accepted the trust, and afterwards, on the 18th day of February, 1868, the said John L. and Stephanie executed to said Slocum another instrument, which was annexed to the first mentioned instrument, and provided for extending it to secure to Slocum such sums of money as he might after that date advance, in pursuance of the agreement mentioned in said instrument, and continuing the power of attorney to receive from Livingston one-half of the income until the whole amount of moneys, which under such agreement should thereafter be advanced by said Slocum for the benefit of said Stephanie, and interest should be paid.

It appeared that thereafter the respondents made three promissory notes — the defendants Coster and Barklie signing as sureties — with said Stephanie, amounting in all to $3,600, which were indorsed by defendant John L. Barbour That when they became due

Slocum informed the defendants that said notes were the property of Jenett M. Clark, and 'that for the purpose of extending the indebtedness and interest on said notes the said defendants made the bond set forth in the complaint as sureties only, and for the indebtedness on the notes and for no other consideration. Another power of attorney, dated December 18, 1871, was also given, reciting the former power of attorney; reciting that the sum of $3,600 mentioned in the power of attorney of February, 1868, had not been paid in whole or in part, and that sundry other sums of money paid and advanced by Slocum had not been repaid; that the said Stephanie was further indebted to sundry individuals in Saratoga county to the amount of about the sum of $6,000, and that the said Slocum had agreed to advance for the said Stephanie a sum not to exceed $6,000, and renew the power of attorney, to receive from Livingston one-half of the moneys belonging to said Stephanie, or to the said John L. in right of his wife, after such deduction as Livingston might be entitled to make for liens and expenses until all sums of money theretofore advanced by said Slocum to or for said Stephanie, and interest thereon, and all expenses properly incurred, and all such moneys as he might thereafter advance to the extent of $6,000 for paying said Stephanie's debts, etc., should be fully paid or received by said Slocum. It further appeared that up to the time of her death, July 5, 1876, the said Stephanie was entitled to, and ought to have received from said Livingston, who was her trustee, the sum of $8,100 or more, and that Slocum was entitled to receive the sum of $4,000 or more, annually; that on or about the 12th day of February, 1872, Slocum refused and neglected to make any further collection under said powers, and omitted to perform his trust; and on or about May 23, 1872, wrongfully entered into an arrangement or agreement with said Stephanie, by which he revoked the powers of attorney, and annulled and canceled the trust created by the several instruments, and neglected to protect the defendants in their rights under said instruments, and destroyed and deprived them of the power of protecting themselves thereunder. The defendants claimed that by reason of the premises aforesaid the defendants had lost their security, and that by reason of the negligent and wrongful acts of said Slocum the defendants had been injured to the amount of

$7,000, or the amount due on the bond; wherefore the defendants asked that that sum be set off against the amount claimed in the action; that they be adjudged discharged from the bond, and that as to the defendants the bond be delivered up and canceled.

*M. Hale,* for the appellant.

*L. B. Pike* (submitted), for the respondents.

OSBORN, J. :

This is an appeal from a judgment rendered in favor of the respondents, defendants, Barklie and Coster, upon a referee's report, and also from a motion denying a new trial to the plaintiff upon the case as made and upon affidavits. This motion for a new trial was made at Special Term before Mr. Justice LANDON, and, as we think, properly denied. The only question to be considered then is, whether the referee made any mistake in his findings of fact or conclusions of law arising therefrom.

From a very careful examination of all the evidence in the case I am convinced that the indebtedness originally secured by note, and afterwards by the different bonds given, with the powers of attorney to Slocum, therein contained, all had reference to the individual indebtedness of Stephanie Barbour; that the defendants, Francis S. Barklie and Washington A. Coster, had no personal interest therein; that they signed the notes originally, and the bonds, including the bond on which this action is brought, as sureties only, and that this was all the time well known to William Slocum, the plaintiff's assignor. Stephanie Barbour during all this time had a life interest in the property and estate of another, of which one Walter Livingston was trustee, and from which she was entitled to receive the sum of $8,000 and over annually.

It would seem that her personal and living expenses were extravagantly large, and the object of the bonds, with the power of attorney therein contained, was to secure the indebtedness which existed against her by directing the trustee, Slocum, therein named, to draw from said Livingston one-half of her interest yearly, being the sum of $4,000 or over, and apply the same in payment of her debts, including the debts for which Francis A. Coster and Washington A. Coster were liable as sureties, first, on the notes which they had

signed and which subsequently were merged in the bond in suit also signed by them as sureties. True, the bond in suit was not given to Slocum but to one Jenett M. Clark, but the power of attorney to Slocum to receive this $4,000 annually and apply it to the debts of Stephanie remained in force as well as to this bond as to the original notes which respondents had signed as sureties. Indeed, the notes formed the consideration for the bond. In a word, while the obligee named in the bond was Jenett M. Clark, yet the bond was made up of the original notes signed by the respondents. To secure these, perhaps with other indebtedness of Stephanie, this power of attorney was given. This still remained in full force as a protection to the same sureties who signed the bond. This the referee finds, and there is evidence to support it as well as the fact that all this was well known to all the parties concerned.

Now, while this was the state of affairs, and in 1872, Mrs. Barbour and her husband revoked, and Slocum consented thereto without the knowledge or consent of Barklie and Coster, this power of attorney, and from that time onward Slocum did nothing under such power of attorney and no money whatever was paid to the relief of the sureties.

After the revocation of the power of attorney and the giving up by Slocum of the trust and the surrender of the security he held, he (Slocum) by assignment from the Clarks became the owner of this bond in suit. He subsequently assigned to the plaintiff. I think it clear that the plaintiff took the assignment from Slocum, charged with all the equities and defenses which existed in favor of the sureties against Slocum, if he had commenced an action on this bond and mortgage to recover during the time he held this bond. (*Trustees, etc.,* v. *Wheeler,* 61 N. Y., 88; *Davis* v. *Bechstein,* 69 id., 440; see, also, opinion of the referee on that point.) The Clarks possibly could have recovered against the sureties on the bond, if the action had been brought by them, assuming the surrender and revocation were given up and surrendered without their assent. When Slocum took an assignment thereof he then stood in the same position as he would if the bond had not been given to him.

If such had been the case would it not be clear that Slocum's consent to a revocation of the power of attorney, his abandonment

of his trusteeship and surrender of the security he held for the benefit of the sureties, would have prevented his recovery? It seems to us most clearly so. The security by Slocum would have operated to their discharge. It was an instrument of such a nature that he could not surrender it. He held it as well for the benefit of the sureties as the obligee named in the bond, and he could not destroy it without the consent of the parties (sureties) for whose benefit it was given. We find evidence sufficient to sustain such findings.

We think the action of Slocum operated to release the sureties to this bond so far at least as he had, or by the assignment to him afterwards, became interested in the same, and that the plaintiff acquired no other or greater interest or right than Slocum could enforce.

In this view it becomes unnecessary to examine the legal conclusion at which the referee arrived, that the action of Slocum created a claim for damages by the sureties against him, and therefore could be set up by way of counter-claim to the cause of action alleged in the complaint.

The judgment and order appealed from must be affirmed, with costs.

RUMSEY, J., concurred.

LEARNED, P. J. (dissenting):

The doctrine that a creditor who has received securities from a principal debtor must hold them for the benefit of sureties, and that a surrender without their consent discharges them *pro tanto*, is purely equitable. It is not a legal or arbitrary doctrine, but is one to be enforced solely to do equity between all parties. It rests therefore on knowledge by the creditor of the facts constituting this obligation to others, and is enforced because he has acted in violation of an obligation of which the facts informed him.

In this case the bond in suit was executed to Jenett M. Clark, December 19, 1871; was held by her until April 12, 1872, when it was assigned to Maria B. Clark; was held by Maria B. Clark till January 8, 1875, when it was assigned to Slocum; was held by Slocum till September 18, 1879, when it was assigned to the plaintiff.

I see no evidence that Jenett M. Clark, or Maria B. Clark or the plaintiff knew anything of the power of attorney executed by Stephanie Barbour to Slocum, or that they had any control over it or over Slocum.

So far as appears this power of attorney was an arrangement between Stephanie Barbour and Slocum, by which she endeavored to set aside a part of her income for the payment of debts in order to guard herself against her own excessive expenditures. It does not appear to have been an instrument to which Jenett M. Clark was a party. Unless some duty was imposed upon her and accepted by her in respect to this power of attorney she could not be affected by the acts of the parties thereto.

For instance, if a creditor held the note of a debtor with a surety thereon; and if the debtor should afterwards make an assignment to secure that note; and if the assignee without the consent of the surety should surrender assigned property, this transaction could not affect the creditor, unless he took some part therein.

So in this case, as far as I can discover, Jenett M. Clark, was not a party to the power of attorney, although if it had been acted upon, it might have inured to her benefit. But she had nothing to do with it, and did not cause or consent to the action of Slocum in respect to it.

On the 23d of May, 1872, Slocum consented to the revocation. Now if we assume that that was such an act as would have released Coster and Mrs. Barklie from any liability, as sureties, on a debt then owing to Slocum, how could it affect a debt then held by Maria B. Clark? If it could, then it was in the power of Mrs. Barbour by a transaction *inter alios* (that is, by a transaction between herself and Slocum) to discharge Coster and Mrs. Barklie from their liability on a bond held by Maria B. Clark. I know that the referee finds that the bond in suit was delivered to Slocum, as agent of the obligee. So he might have been for the purpose of receiving the bond. But there is nothing which shows that the obligee had knowledge of the power of attorney, or accepted him as her *quasi* trustee to act under that power. There is nothing, in short, which imposes on her that obligation in regard to the security created by the power of attorney, on the breach of which obligation the defendants rely. The wrong doing alleged was committed by Slocum.

But it is said this equitable right became a counter-claim when on January 8, 1875, Slocum became the owner of the bond, because it arises out of the contract or transaction set forth in the complaint. This was the view of the learned referee. But what has been said above shows, I think, that this cause of action does not arise out of the contract or transaction set forth in the complaint. (*Edgerton* v. *Page*, 20 N. Y., 281.) If it arose out of that transaction it would seem to follow that it would be a defense as against Jenett M. Clark, the original party to the transaction set forth in the complaint. And that I have shown could not be. Nor can the defense be allowed under section 501, subdivision 2, because it is not a cause of action on contract. The case cited by defendant of *Glen and H. Man. Co.* v. *Hall* (61 N. Y., 226), was an action to restrain the violation of plaintiff's trade-mark. The counter-claim allowed, was held to be connected with the subject of the action set forth in the complaint. The case therefore is no authority upon subdivision 2. If, as said above, Slocum had been the original creditor and had held the securities for his benefit; then it might be said that the alleged cause of action set up by defendants arose out of the transaction set forth in the complaint.

The defendants' claim is, that Slocum held the rights given by the power of attorney as a *quasi* trustee for their benefit. We cannot say that a breach of such *quasi* trust is a breach of contract.

It seems to me therefore that the defense is not a counter-claim allowable in this action.

Judgment affirmed, with costs.