## RECOVERING POSSESSION OF AGRICULTURAL FAIR GROUNDS.

[Circuit Court of Lucas County.]

THE TOLEDO EXPOSITION COMPANY v. JOHN W. KERR AND OTHERS AS THE BOARD OF COUNTY COMMISSIONERS OF LUCAS COUNTY, OHIO, AND THE LUCAS COUNTY AGRICULTURAL SOCIETY.

Decided, June 23, 1906.

*Actions—For Recovery of Real Estate Under Section 5781—Equitable Features of Action—Pleading—When an Agricultural Society Ceases to Exist—Ejectment by County Commissioners of Tenant of Agricultural Society—Title of Property Purchased by County for Use of Agricultural Society—Grafting a Counter-Claim or Cross-Petition on an Ejectment Suit.*

The Lucas County Agricultural Society, having ceased to give fairs on grounds purchased by the county for its use in that manner, granted a license to the Toledo Exposition Company for the use of the lands for the giving of expositions of a prescribed character for a period of twenty years. The Exposition Company in turn ceased to give expositions, and the County Commissioners of Lucas County brought the present action for recovery of the real estate, claiming to be the owner thereof, and alleging that the property is wrongfully held by the Exposition Company, to which was added a cause of action for rents and profits and a prayer for a large amount claimed to be due thereon. *Held:*

1. The action is one for the recovery of real property under Section 5781, notwithstanding there are allegations which seem to call for some form of equitable relief.

2. The Agricultural Society, by ceasing to give fairs, and leasing its grounds to another organization to carry out that purpose, did not fall within the statutory provision that, when such a society is "dissolved or ceases to exist" its real estate and the improvements thereon shall vest in the county. The time fixed by this provision for the lapsing of the rights of the society in the property is when it ceases to exist as a corporation, and not when it ceases to give fairs; and the action of this society did not, therefore, *ipso facto* deprive it of its right of property or the possession and control thereof.

3. The Exposition Company, being a tenant of the Agricultural Society, has a right to defend under the title of that society, and can not be

ousted from the property unless it be made to appear that the Agricultural Society has lost its rights therein, and a judgment against the Exposition Society on the pleadings was therefore erroneous.

4. Inasmuch as one action in ejectment can not be engrafted or spliced upon another, these two actions by the county commissioners and the Agricultural Society for the recovery of the same property from the same defendant can not travel along parallel lines in the same case. The motion to dismiss the cross-petition of the Agricultural Society was, therefore, properly granted in so far as it is a cross-petition or counter-claim; but in so far as this pleading was available for the purpose of combatting the claim of the plaintiff, as distinguished from an independent claim on its own behalf against the Exposition Company, it should stand, and the society should be allowed to remain in court to make its defense.

PARKER, J.; HAYNES, J., and WILDMAN, J., concur.

Error to the court of common pleas.

The action in the court below is entitled "John W. Kerr, L. B. Bailey and Frank Wortsmith, as the Board of County Commissioners of Lucas County, Ohio, v. The Toledo Exposition Company and the Lucas County Agricultural Society." It was brought to obtain relief touching certain lands and was, it seems to us, in the beginning, very clearly and distinctly an action for the recovery of real property within the meaning of Section 5781 of the Revised Statutes of Ohio. The case has presented to us some puzzling questions, due largely to the changes made in the pleadings in the progress of the case in the court below, and to some changes in the opinions of the judges in the court below who had to deal with the case during its progress there. Judging from the journal entries, at times it appeared to the trial judges that it was an action for the recovery of real property, and at other times, that it was an equitable proceeding of some sort or description. But, in order that we may solve the problems presented, it becomes necessary for us at the beginning to determine the character of the action, and we have concluded that it is, and has remained throughout, an action for the recovery of real property; and that appears to have been the final conclusion of the trial court when the case was finally submitted and decided.

It is provided by Section 5781 of the Revised Statutes that:

"In an action for the recovery of real property, it shall be sufficient if the plaintiff state in his petition that he has a legal estate therein, and is entitled to the possession thereof, describing the same," etc.

In the original petition in this case it is stated "that the plaintiffs have a legal estate in the following described lands and tenements" (and then follows the description). "That the said plaintiffs are entitled to the possession of said premises, and that the said defendants unlawfully keep them out of the possession thereof." And the prayer to the first cause of action is: "The said plaintiffs therefore pray judgment against the said defendants for the recovery of the possession of said premises." Then follows a cause of action for rents and profits, and a prayer for a large amount which the plaintiff claims is due upon that account.

In the amended petition—and just why an amended petition was filed we are not clear—it is not so distinctly stated that the plaintiff and the defendant the Lucas County Agricultural Society are in court in an adversary attitude. While it is stated that the plaintiff has a legal right in the land, it is also stated that the plaintiff is entitled to exclusive possession and that the exposition company unlawfully keeps the plaintiff out of possession of the premises; but the plaintiff continues to assert that it is entitled to possession, and it has made the agricultural society a defendant, and the agricultural society has not demurred or sought to be excused from answering in the case on account of the absence of direct allegations of adverse possession against it, but has filed a pleading in which it claims that it is entitled to possession of the premises, and from which it appears that if the exposition company is in possession, it is in possession under the agricultural society; and therefore, we think, upon the pleadings as they stood at the time the case was submitted and decided in the court below, it still remained an action for the recovery of real estate against both of·the defendants named, and that

they both had a right to be, and to remain in court, at least to defend. There is a great deal more set forth in the amended petition than I have stated—some allegations that would seem to call upon the court for some form of equitable relief—but we think these allegations did not change the character of the action.

The case of *Raymond* v. *T., C., St. L. & K. C. R. R. et al*, in the 57 O. S. Reports at page 271, affords a good illustration of the principle that matters of equity connected with an action to recover real estate do not change its essential character as an action at law. I shall only read the fourth clause of the syllabus:

"A petition against a railroad company by one out of possession of real estate, which alleges title and right to possession of the land in plaintiff, and charges a wrongful entry and possession by defendant, and prays that the defendant may show his interest therein, that it may be adjudged null and void, and that judgment for the possession of the property may be awarded plaintiff, and defendant enjoined from interfering therewith until compensation is made, states a case for the recovery of real property, notwithstanding the petition also contains allegations of threatened irreparable damage as a ground for relief by perpetual injunction, and of a dispute as to boundary lines, as a ground for action by the court in settlement of such dispute; and of a dispute as to title, as a ground for asking that plaintiff's title may be quieted. But such action being one in which either party may demand a jury is not appealable."

It is said by counsel for plaintiff in error that this amended petition does not contain a prayer appropriate to an action brought under Section 5781 of the Revised Statutes. But we think the prayer is sufficient; for, among other things, the prayer is, that "The Toledo Exposition Company"—the company, I remark, which appears to be in the actual possession of the premises—"may be ordered to surrender the possession of said premises to this plaintiff, and that it be enjoined and barred from interfering with the possession or use of said premises," etc., very much like the form of the prayer in the petition in the case to which I have just referred.

As a further statement of what this case is about, I shall read a part of the statement made by the court below in deciding the case, or in his opinion after the trial:

"Briefly speaking, this action is brought by the Board of County Commissioners of Lucas County against the Toledo Exposition Company and the Lucas County Agricultural Society, to recover the possession of certain real estate of which it claims to be the owner, and which it alleges is wrongfully held by the defendant company (i. e., the exposition company).

"The [agricultural] society, has, however filed a cross-petition against its codefendant, in which it alleges the same facts and asks the same relief as are set forth and demanded in the amended petition.

"The defendant company [and here the judge evidently refers to the exposition company] denies the right of either plaintiff or cross-petitioner to the possession of the real estate in controversy. The ultimate question of law to be determined is: To whom does this right belong?

"The plaintiff is authorized by Section 845, R. S., "to ask, demand and receive, by suit, or otherwise, any real estate or interest therein, whether the same is legal or equitable, belonging to their county.

"Therefore, if the plaintiff has a legal estate in and is entitled to the possession of the real property in controversy, judgment must be rendered in its favor.

"It being admitted that all of this real estate was purchased with money raised by general taxation, and paid out of the county treasury of this county, it becomes important to examine the statutes by virtue of which the appropriation of public funds for this purpose was authorized.

"February 28, 1846—9944 O. L., 70—an act was adopted by the General Assembly, entitled 'An act to encourage agriculture,' which provided that when thirty or more persons associated together as an agricultural society, organized by the adoption of a constitution and the election of officers, and gave an exhibition as required thereby, the county in which they resided was empowered to aid the society by the annual payment of not more than $800. Sections 2 and 3 of the act provided that the society should annually offer and award premiums, regulate the same so that small as well as large farmers might compete therefor, and publish certain reports

"The obvious purpose of this act was, by the offer of public aid, to encourage the organization of societies formed for the purpose of stimulating improvements in agriculture and its

products by the holding of annual exhibitions or county fairs, and the awarding of premiums open to general competition.

"February 15, 1853, this act was supplemented by a law now embodied in Section 3700 of the Revised Statutes, which provided that the societies then existing. or thereafter organized for the purpose to which I have called attention, should become and be corporations, capable of suing and being sued, and of holding in fee simple real estate as sites whereon to hold fairs.

"The defendant, the Lucas County Agricultural Society, was incorporated and organized under and in accordance with the act of February 28, 1846, and the amendments thereto, and on the 1st day of June, 1870, with moneys furnished by this county, it acquired title in fee simple to twenty acres of land situated in Section 33, Washington township.

"April 18, 1874—O. L., 190—an act was passed by the General Assembly authorizing the county commissioners of this county to levy a tax for a term of years 'for the purchase of additional grounds and improvements of the grounds' of the Lucas County Agricultural Society.

"By Section 4 of this act it is provided that all grounds purchased, and improvements made as aforesaid, shall be under the exclusive control and management of the board of directors of said agricultural society, and the title to all of said grounds and improvements shall be vested in fee in said Lucas county.

"By virtue of the powers thus conferred, the board of county commissioners, on the 25th and 29th days of November, 1882, acquired title in fee simple to about twenty-three acres of land adjoining that purchased by the agricultural society.

"August 13, 1892, the agricultural society entered into a written contract with the Toledo Exposition Company, a corporation, whereby the former attempted to grant the latter 'the right and use' of all said real estate for a term of twenty years. Thereupon the exposition company entered into possession of said real estate made improvements thereon, and has continously ever since, remained in the exclusive occupancy and control thereof."

The court below treated these as conceded facts, and we think that by the pleadings they are substantially so; this statement may require some slight modification, but, for the purpose of my remarks, it may be treated as true. Most of these facts are stated in the amended petition; and it is there said that this grant or right under the written contract or

license, was in consideration that the Toledo Exposition Company should and would each year hold and give a public fair and exposition of the products of agriculture, horticulture, manufacturing and live stock, and such other entertainment in the branches of industry as shall be of interest and benefit to the people of Lucas county, Ohio, and surrounding country, and that this right was given for that and no other consideration; in short, that the exposition company should hold an annual agricultural fair on these premises. The plaintiff avers that this written license—as it is called in the amended petition—"was made without authority from, knowledge or consent of, the Board of County Commissioners of Lucas County, Ohio." And that it was, is, and at all times has been, null, void and of no effect. That the Toledo Exposition Company took possession in pursuance of this license; that it has failed to give such a fair as it was privileged and bound to give upon these premises; that it has become and is insolvent and unable to give such fairs; that from the year 1902 down to the time of the filing of the petition, it has "not only failed to give any exposition on said grounds, but without any authority whatever, have used and rented said premises and permitted the same to be used, and are now using and permitting the same to be used for keeping, training and racing horses and selling of beer and other intoxicating beverages, and for other uses and purposes of gain, all of which were unauthorized by virtue of said license and contrary to law; and have wholly abandoned the use of said premises for the purpose authorized by said license and by each and all of said acts, the defendant, the Toledo Exposition Company, has forfeited any and all rights which it sought to acquire or did acquire by virtue of said written license," and that its rights in the premises have ceased and determined, and whatever rights the defendants may have had in the premises have become forfeited to the plaintiffs.

A cross-petition was filed by the agricultural society setting up substantially the same facts with respect to the giving of this license, the consideration for it and the failure of the exposition company to comply with its terms. The prayer of this

cross-petition is against the defendant, the Toledo Exposition Company, for the possession of the premises.

Under the statutes providing for the purchase of these grounds and under which they were acquired, it appears that the legal title to one tract was taken in the county for the use of the agricultural society, and, as we construe it, in order that the agricultural society might use it for the purpose of an agricultural fair, because the agricultural society had no other business or concern with it.    The fee was vested in Lucas county.    The title to the other tract was taken in the agricultural society, but the law contained the following provision:

"When the society is dissolved or ceases to exist in any county where payments have been made for the purchase or improvement of sites for the use of such society, the improvements and real estate shall vest in the county making such payments."

The county, through the commissioners, is here asserting its right to the possession of the one tract by virtue of its legal title and the cessation of any legitimate use thereof by the agricultural society, and to the other tract under the provisions of the statute that I have just read, to the effect that when the society is dissolved or ceases to exist, the improvements and real estate shall vest in the county making the payments.    These allegations of the amended petition and the cross-petition of the agricultural society are in part admitted, and in part denied by the Toledo Exposition Company; and the exposition company sets up some new matter of alleged estoppel, which is denied by the plaintiff in error.

The answer of the Toledo Exposition Company to the plaintiff's amended petition "denies each and every allegation in said petition contained which is not herein expressly admitted to be true."    And it is not admitted that it has done any of the things averred with respect to the misuse of these premises which plaintiff claims have resulted in a forfeiture.    It is also expressly averred therein that the exposition company had complied in all respects with the conditions of the contract and

license, and that it has not done anything unlawful or that should result in a forfeiture.

It appears that the case was tried for some days to the court on the theory that it was an equity case, and the court held the case under consideration for some months, and then concluded that it was not an equity case, and what was then done appears from the following journal entry, under date of March 12, 1906:

"This day came the parties to this action by their respective attorneys and thereupon the plaintiffs moved for judgment against the defendant, the Toledo Exposition Company, upon the pleadings filed in this action, and also the defendant, the Toledo Exposition Company, moved for judgment on the pleadings filed in this action dismissing the cross-petition of the defendant, the Lucas County Agricultural Society, and the court being fully advised in the premises, finds the said motion of the said plaintiff for judgment on the pleadings against the defendant, the Toledo Exposition Company, well taken and should be granted, and that on said pleadings the said plaintiffs are entitled to the immediate possession of the real estate described in the amended petition, and that the defendant, the Toledo Exposition Company, is unlawfully keeping plaintiffs out of the same as alleged in said amended petition, to which action and finding of the court, the defendant, the Toledo Exposition Company, then and there in open court duly excepted.

"And the court further finds that the said motion of the Toledo Exposition Company for judgment on the pleadings against the Lucas County Agricultural Society dismissing its cross-petition against the said the Toledo Exposition Company is well taken and should be granted, to which action of the court the defendant, the Lucas County Agricultural Company, then and there in open court duly excepted."

Appropriate judgments follow. The Toledo Exposition Company prosecutes error here to the action of the court in giving judgment against it; and the agricultural society, by cross-petition in error, prosecutes error to the finding and judgment of the court against it dismissing its cross-petition.

It appears from the opinion of the court which we have before us (to which I am sure I shall not do full justice in undertaking to state the substance, but which I can not take time to read in its entirety), that the court was of the opinion that,

by the giving of this lease or license, and the surrender of possession of these premises and ceasing to hold fairs itself thereon, the agricultural society lost or forfeited all its rights in the premises under and by virtue of the provision of the statute, to the effect that when the society is "dissolved or ceases to exist" in any county, etc., the improvements and real estate shall vest in the county; and further, that the lease or license was so far illegal and void that the exposition company acquired no rights under it, and therefore, the judgment should award the possession to the board of county commissioners of the county, as against both these defendants; and it was so determined.

This action of the court appears to have been based largely, if not entirely, so far as judicial authority is concerned, upon the case of *The Trustees of the Canandarqua Academy* v. *James McKechnie et al,* found in the 90 N. Y. Rep., page 618. The gist of that case so far as the point involved here is concerned, is stated in the first clause of the syllabus, which I shall read:

"The Ontario Female Seminary was incorporated for the purpose of conducting a school for the educaton of females, and by its charter (Chap. 145, Laws of 1825), it was declared that its funds should 'be exclusively devoted to female education.' Plaintiff advanced to said seminary $1,000, under a resolution authorizing such advance on condition that when the seminary 'shall cease' it shall return that sum on demand, and shall give security for such return on its real estate. As such security, the seminary, in 1827, gave a mortgage, which recited the resolution and contained a condition to the effect that 'in the event of said seminary ceasing,' and if it shall not pay said sum on demand, the plaintiff could foreclose, etc. Said seminary subsequently executed another mortgage upon the premises, which was foreclosed and the premises sold, and the seminary thereupon ceased to maintain any school and has not since exercised any of its franchises; it was divested, by the sale, of all its real estate, and had thereafter no means to enable it to keep or maintain any school. *Held,* that the seminary had 'ceased' within the meaning of the contract, and the contingency had happened upon which plaintiff was entitled to demand the sum advanced; that a formal dissolution of the corporation was not necessary, and that upon refusal to pay the money on demand, plaintiff was entitled to foreclosure."

It will be observed that that case turned upon the construction of a contract. A donation of $1,000 had been made, which was to be repaid when the seminary should cease; and we think that the construction given by the court to that contract was a fair and reasonable one; that the word 'cease' was intended to mean and did mean the cessation of the school, and we think this case would be much like that if the Legislature had provided that upon the agricultural society ceasing to maintain or carry on a fair, the property should revert to and vest in the county. That is the construction put upon this statute by the court of common pleas, but we can not bring our minds to accept that construction. While the words in this provision of the statute are "dissolved or cease to exist," and the court below is of the opinion that "cease to exist" must therefore mean something else or something different from "dissolve," we entertain the view that the phrase contains mere tautology; that "ceases to exist" there means ceases to exist as a corporation, and not merely ceasing to carry on such fair as the corporation should carry on and that the agricultural society is not divested of its right to the property by mere non-user thereof. We think this view is sustained by a case to which we are cited: *Austin Webb* v. *Vandeveer B. Moler,* found in the 8th Ohio, page 548. The character of the case is made sufficiently apparent by what is said by Judge Lane, who delivered the opinion. It is very short and I will read it:

"No proposition is more thoroughly established than that the franchise of a corporation can not be forfeited without a judgment either on *scire facias* or *quo warranto*. Abundant authorities are cited to this effect in the argument.

"The court of common pleas seems to have considered, that although corporate franchises can not be divested without a judicial sentence, corporate property might be lost by non-user alone. No such distinction is known in law. The capacity to hold land in one franchise. The grant of land to a corporation is called, by Blackstone, 'an estate for life, which may endure forever, or which reverts to the donor only when the life of the donee is terminated.' 1 Black. Com., 484.

"Among the multitude of authorities bearing on this point, it is enough to refer to two from New York: 6 Cowen, 23; 1 Hall. 97. The doctrine these authorities declare is, 'that pro-

ceedings of trustees of a corporation, *de facto,* are valid until ousted by a judgment in a proper suit, and that no advantage can be taken of any non-user, on the part of a corporation, by any defendant in a collateral action.

"The trust of a charity is not lost by the trustees' neglect of duty. If it can not be carried into execution, the land may revert to the donor. But where it can be enforced, a court of chancery will furnish all needful relief."

Of course, it is not pretended here by the representatives of the county that the corporation has been dissolved or that it has ceased to exist, in the sense that it is no longer a corporation. We think it fairly appears from the pleadings and is an assumed fact in the case, that the organization is kept up, and we are of the opinion that it may be rehabilitated; that it may resume its functions and duties as a corporation, and that if it had such rights as it asserts against the exposition company, it may repossess itself of its property and enter upon the holding of agricultural fairs, for aught that appears in the pleadings in the case.

Entertaining these views, we hold that the judgment on the pleadings as against the agricultural society—for it is in effect that—that the plaintiff has a right to the possession of these premises—is wrong. Reasons why the right of possession may have been forfeited by or possession may be taken away from the agricultural society and full dominion over the property may be given to the county, may appear in the further progress of the case; but we are of the opinion that the giving of this lease or license, and the ceasing upon the part of the agricultural society to hold annual fairs, do not alone and *ipso facto,* deprive it of its right of property or its right of possession of and control over the property.

As to the exposition company, it appears to us that it is a mere tenant of the agricultural society. Whether it has forfeited its right to the agricultural society so that the agricultural society may resume possession of these premises, we need not now determine. It has a right to stand here on its defenses under the title and right of the agricultural society, and we conceive that its rights do not fall below and can not rise

above those of the agricultural society.  The plaintiff, to pre-
vail against these two defendants, must, as a necessary part
of its case, make it appear that the agricultural society has lost
all its rights, whereby the county has full right to possession as
against both defendants.  Therefore, it appears to us that a
judgment against the exposition company on the pleadings is
necessarily erroneous.

I now come to a consideration of the case presented upon
the cross-petition of the agricultural society and the action of
the court thereon.  It fairly appears from these pleadings and
the arguments of counsel, and, indeed, counsel very candidly
declare that the board of county commissioners and the agri-
cultural society are working in harmony; that they are in-
different about which one prevails against the exposition
company.  But they are not here in the same right; they are
not here standing upon the same premises; they are not here
asserting joint rights, but they are standing upon independent
grounds; the county is claiming the right to possession for
itself and the agricultural society claiming the right to pos-
session for itself.  The board of county commissioners 'has
brought what we are in the habit of calling "ejectment" (a
short and easy name, used for this style of action because it
closely resembles the old action in ejectment), against the expo-
sition company, and, as we view it, against the agricultural
society.  The agricultural society, by its cross-petition, brings
an action of ejectment on its own behalf against the expo-
sition company.

It is said that they may do this under the code, either by
cross-petition to determine the rights of all the parties in the
subject-matter, or by way of counter-claim.  When this cross-
petition was filed, a demurrer to it was filed by the exposition
company, the claim of that company being that this was not
properly a counter-claim; that it was not the kind of a claim
that could be asserted by a cross-petition in the action.  A ma-
jority of this court are of the opinion that that contention was
correct.  This demurrer was overruled.

A motion was afterwards made to strike the cross-petition
from the files; and we think that, in so far as it *is* a cross-

petition, it should have been stricken from the files—it ought to have been gotten out of the case in some way. We are of the opinion that one action in ejectment may not be engrafted or spliced upon another action in ejectment as attempted here.

We know that the provisions of the code are very liberal, and that its purpose is to settle, as far as possible, all controversies between parties respecting the subject of an action, and that in cases where land is to be sold and a fund distributed, where there are equities to be determined, and in a variety of actions of that· sort, everything that might have been done formerly in an action at law and by a bill in equity touching the same subject of an action, may be done now in a so-called civil action, but we have no knowledge of any case where two actions, distinctly at law, carried on together for the recovery of the possession of real estate, have been sustained by the court. If the plaintiff should fail in the action which it brings into court for the possession of this real estate, it would not have the least interest in the action of the agricultural society on its so-called cross-petition. It is difficult to see how the case could well be submitted to a jury without very great confusion and difficulty; and we do not think it is the purpose of the code to promote confusion in trying to effect the purpose of preventing a multiplicity of actions. If the board of county commissioners had brought an action against these two defendants charging them with trespass, we think it would have been a very strange and unwarranted proceeding for one of the defendants in the same action to file a so-called cross-petition or counter-claim against his co-defendant admitting that a trespass had been committed but alleging that it was committed by the co-defendant against it and not against the plaintiff, and asking that it might have a judgment on account of the trespass. We think that in this character of suit the subject of the action is the claim of the plaintiff to possession of the premises. It is so held in a number of authorities in New York, to which our attention has been cited, and we know of nothing directly upon the subject in this state. It is true that there are various actions in which the subject of the action is the land itself, but we think that is not so in an action of ejectment.

The case of *Brown* v. *Kuhn* in the 40 O. S., page 468, is a case where the facts are complicated, and I shall not try to state them, but I will call attention to a remark by Judge Granger in his opinion. At page 486 this is said:

"But the law does not allow two petitions by different plaintiffs in the same action. It does not permit a *petition* containing different causes of action in one of which one set of plaintiffs are alone interested, and a second in which another set of plaintiffs are alone interested."

And it is pointed out that the answer could properly seek relief only touching the subject-matter set up in the petition. What is quoted does not make very clear what was involved, and it could not be made very clear without taking more time than I care to devote to the case, but it indicates the views of the court on the subject of two actions at law traveling along parallel lines in the same case against the same defendant —that it is not permitted and can not be done. If the agricultural society conceived that it had a cause of action to recover possession of these premises from its tenant, it should have instituted an action in that behalf. The purpose the parties appear to have in view might be accomplished through the acquisition by the county of the rights of the agricultural society, so that the county could sue not only in its own right, but in the right which it now appears to us is lodged in the agricultural society. I merely suggest that, but I have not thought it out; it may be entirely impracticable. But they are not here in the same right now; they are asserting entirely independent claims, each on behalf of itself, to recover this property from the exposition company, and this, we think, can not be done.

In so far as any pleading that the agricultural society has filed or may file constitutes an answer to the claim of the plaintiff, in so far as it may be available for the purpose of combating the claim of the plaintiff, whether you call it an answer, or cross-petition, or counter-claim, or what not, so far as it may stand in opposition to the claim of the plaintiff rather than as an independent claim on its own behalf against the exposition company, we think it should stand; that the agricultural society

should remain in court to make its defense. We hold, however, that the order of the court dismissing its cross-petition, is not erroneous, unless it may be open to the construction.that the dismissal was on the merits and not without prejudice. The judgment of the court of common pleas against the exposition company will be reversed; that part of the judgment dismissing the cross-petition of the agricultural society will be modified so that it may not prejudice the society in any future action on the same cause of action. As I have indicated, we regard the agricultural society a proper defendant and still in court for the purpose of asserting defensively any claim that it may have against the claims of the plaintiff.

Judge Wildman does not concur in our views expressed on the subject of the cross-petition.

WILDMAN, J.

I am unable to concur with the majority of the court as to the disposal of the cross-petition filed by the Lucas County Agricultural Society. On all other questions involved in the case I am in accord with my associates.

The action was brought in the lower court by Kerr and others, as county commissioners, asserting both title and right of possession to the land in controversy. The agricultural society and the exposition company were both properly made defendants. The exposition company was in possession, and the agricultural society, equally with the plaintiffs, was a claimant to both title and possession. Its claims were adverse to those of the other parties and were "connected with the subject of the action," which, as I view the law, was the land in dispute.

The majority of the court seems to place some reliance on supposed adjudications in New York as to the scope of a counterclaim under our code procedure, defined in Section 5069, of the Revised Statutes, and treat the "subject of the action" as "the claim of the plaintiff to possession of the premises."

The claim of the plaintiffs is larger than a mere possession.

They assert title as well as right to possession, and the claim of the agricultural society, as alleged in its cross-petition, is equally. broad.

These claims are inconsistent and adverse. They are connected. with the land, and the land itself, rather than the claim of either party to it, is the "subject of the action." The rights asserted constitute "the causes of action," not its subject.

That this is the proper distinction is clearly indicated in several adjudications and text-books, and has been recognized even in New York. See language of the opinion in *The Glenn & Hall Mfg. Co.* v. *Chas. S. Hall*, 61 N. Y., 236, where the "property" is said to be the "subject of the action" in a "real action" (such as the one before us), although it may in some other cases be a "violated right."

Bliss in his work on Code Pleading, Section 127, says, that the New York Court of Appeals has been less liberal than other courts in its construction of the phrase "subject of the action," as applied to counter-claims, and in Section 126 says that the land is the subject of the action in ejectment. Phillips (Code Pleading) gives substantially the same rule both as to land in ejectment suits and as applied to personal property in replevin suits. See Phillips, Section 181, note 1, Section 330 and Section 252, and also *Loversohn* v. *Ward*, 45 Cal., 10.

In our own state this rule was applied to personal property in *Morgan* v. *Spangler et al*, 20 O. S., 38; and in *Peter* v. *Farrel Foundry & Machine Co.*, 53 O. S., 534, definitions and principles were adopted and enunciated which seem to me decisive of this question in Ohio. See pages 552 to 556 inclusive, in which Judge Bradbury discusses and construes several sections of our civil code of procedure applicable to counter-claims, cross-petitions and the scope of the court's jurisdiction when invoked.

In the case at bar the court had all parties asserting title to the land in controversy before it; their claims were adverse and related to the same land; and under the policy of our liberal code of preventing a multiplicity of suits, the agricultural society should, in my judgment, be permitted to litigate its claims against not only the plaintiffs, but its co-defendant. The com-

plexity of issues or difficulty of trying them to a jury is not so great as in many a case of set-off or counter-claim clearly permissible under the code; but, however complex or difficult, the cross-petition asserted what our statute defines as a counter-claim:

"A counter-claim is a cause of action existing in favor of a defendant, and against a plaintiff or another defendant, or both, between whom a several judgment might be had in the action, * * * and connected with the subject of the action." R. S., 5069.

No question · is or can be made that, under R. S., 5006, the agricultural society was not properly made a defendant, and R. S., 5311, provides that the court "may determine the ultimate rights of the parties on either side, as between themselves," and R. S., 5782, gives to a defendant in an action to recover real estate, special and express power to plead such matters of counter-claim "as he has or might have in any other form of action, whether they are such as have heretofore been denominated legal or equitable, or both."

*Kohn & Northrop,* for plaintiff in error.

*C. W. Everett,* for the agricultural society.